BLACKMORE, COUNTY AUD., ET AL. *v.* THE P. & G. OIL & GAS CO.

(Decided May 11, 1935.)

*Mr. John W. Bricker,* attorney general, *Mr. William*

*J. Ford,* and *Mr. Cedric W. Clark,* prosecuting attorney, for plaintiff in error.

*Mr. D. Curtis Reed* and *Mr. D. H. Peoples,* for defendant in error.

McCURDY, J. The P. & G. Oil & Gas Company, an Ohio corporation, is the owner of a working interest in a gas well in Bedford township, Meigs county, Ohio, under a lease made to this corporation by one W. L. Whaley, on whose lands the well is located. This lease covers a circular area of six acres with the gas well at the center, the radius to the limits being 300 feet. This leased area is surrounded by lands on which the Ohio Fuel Gas Company holds leases. The P. & G. Oil & Gas Company well was originally drilled some ten years prior to the time this company acquired its lease, and was abandoned by its owners, being regarded at the time the present lease was made as an abandoned well. Originally this well was drilled to a layer of sand below the layer of sand known in this vicinity as Maxon sand, in which the drillers lost their tools and from which point The P. & G. Oil & Gas Company proceeded to raise the level up to the Maxon sand, by filling in, in order that gas might be produced from the Maxon sand. In July, 1930, this well was drilled in and produced a flow of about 3,000,000 cubic feet. The well was connected with the pipe line of the Ohio Fuel Gas Company on the 17th day of July, 1930. The pressure of the pipe line fluctuates from about 90 to 120 pounds in the vicinity of this well. At the time the well was drilled in the rock pressure was 280 pounds, which became reduced by April 1, 1931, to about 140 or 150 pounds. For the first eight months the total production of the well was 214,000,000 cubic feet of gas, on which the P. & G. Oil & Gas Company realized a gross income of $32,500. Some time after this well was in production the Ohio Fuel Gas Company proceeded to drill offset wells. The P. & G. Oil

& Gas Company was required to furnish to the Auditor of Meigs county the production of this well for the year prior to the taxing year in order that a valuation might be fixed on the gas in the ground, and this company did furnish to the auditor on the 25th day of September, 1931, a property return setting forth the production for the first eight months period, and placed a valuation of $12,000 on the leased acreage for the taxing year of 1931. The auditor fixed the average daily production at 580,000 cubic feet of gas. To this figure he applied the multiple of $60 per 1,000 cubic feet, which produced a result of $34,200 and the value fixed by the auditor for the purpose of taxation on the leased acreage was in the sum of $34,200. This method of fixing value was determined upon by the auditors of the various gas producing counties in the state of Ohio and the Tax Commission of the state of Ohio. At this time the Ohio Fuel Gas Company had about thirty-two wells in Bedford township, and upon its property return showing the estimated production of these wells a valuation of $35,200 was fixed by the auditor for the entire leased acreage on which these thirty-two wells were located, using the same method of calculation that was applied to the metered production of the well belonging to The P. & G. Oil & Gas Company. No other factors were taken into consideration by the auditor in fixing the value.

On the 23rd day of December, 1931, The P. & G. Oil & Gas Company, through Percy L. Peoples, its secretary and treasurer, filed its complaint to this assessment of real property with the County Board of Revision of Meigs county, in which it asked for a reduction or decrease in the sum of $20,400, and offered to pay on a valuation of $12,000. The reduction was refused by the board of revision, which fixed the valuation in the sum of $34,200. On January 25, 1932, The P. & G. Oil & Gas Company filed an appeal with the Tax Commission of Ohio. After a hearing the Tax Com-

mission of Ohio found that the assessed value of the property fixed by the board of revision was the true value in money, and dismissed the appeal. Thereafter The P. & G. Oil & Gas Company instituted error proceedings in the Court of Common Pleas of Meigs county directed to the order of the Tax Commission of Ohio, and the Court of Common Pleas upon hearing the cause fixed the valuation of the property in question in the sum of $6,000. Thereafter the Tax Commission of the state of Ohio and the Auditor of Meigs county prosecuted error proceedings in the Court of Appeals, so that this proceeding is now before this court on the petition in error of the Tax Commission of Ohio and the County Auditor, plaintiffs in error, to the decision of the Court of Common Pleas of Meigs county, Ohio.

The law of the state of Ohio requires that gas be taxed as real estate by a uniform rule according to its true value in money. There are no other regulations, restrictions or statutory rules governing the taxing authority in this case.

The problem of valuation in general is a very difficult one, and the problem of valuation in this particular case, where it is applied to an intangible mineral, to wit, gas in the ground, is most difficult. The record in the case clearly discloses that the business of drilling for gas is at all times a hazardous one, and, further, that the business of producing gas after it has been located and reached continues to be hazardous. In the language of the experts, it is a gamble, the producers never knowing from one day to another whether or not they will find any continued production. Fixing valuation in such a situation can easily lead us into the realm of probabilities and it is to such a situation that the taxing authority of Ohio has seen fit to apply a fixed rule in determining the true value in money of gas in the ground.

The method used by the taxing authority is to ar-

rive at the value by taking the result of the multiplication of the average daily production by $60 per 1,000 cubic feet. It must be remembered that the state has made no provisions for taxing gas as it is taken from the ground, where the quantity and the true value in money can be accurately and definitely ascertained. This in some states is called a severance tax. Likewise, there is no provision for a tax on the gross income derived from the production of gas. The state of Ohio has placed upon its taxing authority the most difficult task of fixing the true value in money of gas in the ground.

The P. & G. Oil & Gas Company, the defendant in error in this case, properly admits that the average daily production of a gas well is a necessary factor in determining its valuation. This defendant in error further contends, however, that numerous other factors are necessary and have a direct bearing upon the valuation and must be taken into consideration in determining the true value in money of this particular gas well. This contention is supported by the record in the case. The record in this case discloses conclusively that along with the average daily production of gas it is necessary to consider the factor of the rock pressure of the well and its measure of decrease, if any; together with the factor of the pipe line pressure in the immediate vicinity; together with the decrease in flow, if any; together with the producing layer of sand and the depth and condition of the well. Likewise the factor of the acreage under lease and the factor of offset wells must enter into the consideration. The taxing authority, however, has seen fit to ignore and refuse to consider each and every one of these necessary factors and has done so even in the face of the Attorney General's warning. In his opinion of 1927, Vol. 3, at page 2272, directed to the Tax Commission of Ohio, the Attorney General advised:

"It is conceivable that in many instances produc-

tion alone would not reflect true value in money, which is the basis of Ohio property taxation.

"It is therefore my opinion that the method suggested by the Tax Commission and adopted by the county auditor, may be used by the county auditor in connection with other elements of value in determining the valuation of gas and oil leaseholds."

We are not surprised at the rule adopted and used by the Tax Commission and the county auditors when confronted by this kind of a valuation problem. Their effort has clearly been to escape the intangible—dispensing with probabilities and adopting the tangible—dealing with actualities. This has been done to such an extent that their present method contains one factor alone, that being the production for the year preceding the year for which the valuation is fixed. We can not escape the fact that the application of the rule deals with gas removed from the ground which can not be taxed, and produces a resultant valuation ($34,200) comparable to past gross income ($32,500) which can not be fixed. Past production can only be considered as an indication of the amount remaining in the ground, or likely to be produced in the future. If the past production has been held in check without the degree of check being known, or shut off entirely, the factor is valueless and misleading. When there are many necessary factors in fixing a value, all of which are ignored except the one of daily production, we necessarily arrive at a result which in effect is a severance tax or a tax on gross income. Under the present law such a tax is not authorized. The taxing authority can not overcome the want of legal authority by claiming a name for their result obtained, to wit, true value in money of real estate, when in fact that to which their method is applied is gas removed from the ground, having become personalty. The present valuation problem is one which can be simplified only by legislation. It is within the power of the Legislature

alone to change the method from the fixing of valuation on the intangible gas in the ground to the fixing of valuation on the tangible gas produced by the adoption of some type of severance tax law. Until this is done the county auditors and the Tax Commission of Ohio must take into consideration every necessary factor that exists in determining the valuation of the gas in the ground as evidenced by each producing well.

The only valuation that we can find in the testimony approximating the valuation fixed by the County Auditor, the Board of Revision and the Tax Commission is that given by the witnesses applying the rule herein referred to and ignoring every other necessary factor which we have set forth. Because of these witnesses failing to take into account all necessary factors of value their testimony is of no weight whatsoever. If it were not for the testimony of Percy L. Peoples, the secretary and treasurer of The P. & G. Oil & Gas Company, and his return made to the Auditor of Meigs county, and the complaint filed with the Board of Revision of Meigs County, we could arrive at no other conclusion than that of the Court of Common Pleas. Were it not for this testimony the record would show by clear and convincing evidence that the valuation of this well could not exceed $6,000. However, we believe that in addition to the testimony of the experts, who have taken into account all known factors, it is necessary for the court to consider the factor of the knowledge peculiarly held by the officers of the corporation, who in this case are the owners of the well in question, together with their expressed opinions of value voiced before trial. They are in a position to appreciate in great detail each and every element or factor that goes to make up the value of their interest. Taking the owner's valuation into consideration, given before trial, a true value in money should not be arrived at in a sum less than $12,000.

The reduction requested in the complaint filed with the Board of Revision is evidently a typographical error in the figure given in the sum of $20,200. When The P. & G. Oil & Gas Company tendered in the same complaint an offer of payment on a valuation of $12,000, the decrease asked was clearly intended to be the sum of $22,200, since the auditor's value was $34,200 at that time. The company having fixed the valuation in the sum of $12,000, and having filed its proceedings seeking to have this amount fixed by the Board of Revision and the Tax Commission, on which proceedings the suit in Common Pleas Court was predicated, that court was without authority to grant relief greater than that sought in the Board of Revision.

While it has been shown by clear and convincing evidence that the value of the property as determined by the County Auditor, Board of Revision and the Tax Commission is not the true value in money, and while it has been conclusively proved that the true value in money of this property for the taxing year 1931 does not exceed $12,000, yet there has been a complete failure of proof on the matter of discrimination as urged by the defendant in error. The comparative values of the leased acreage containing thirty-two wells of one corporation ($35,200) and one well of the litigating corporation ($34,200) is doubtless shocking not only to the lay mind but likewise to those engaged in the gas business. It must be remembered, however, that the valuation of the leased acreage on which the thirty-two wells are located was determined by applying the rule fixed by the taxing authority to *estimated production,* while the valuation on the one well was determined by applying the rule to metered or *actual production.* It is evident that the estimated production can not be shown to be erroneous and must be accepted in lieu of a known actual production. While it is true that such a situation is not a healthy one, and it should be

frowned upon and not permitted to exist, yet there is an absence of proof of discrimination.

For the reasons above set forth, and by authority of Section 5611-2, General Code, the finding and judgment of the Court of Common Pleas is hereby modified and the valuation of the property in question fixed in the sum of $12,000.

*Judgment accordingly.*

MIDDLETON, P. J., and BLOSSER, J., concur.